UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHON R. MEAUX | CIVIL ACTION |
| VERSUS | NO. 19-10628 |
| COOPER CONSOLIDATED, LLC AND SAVARD MARINE SERVICES INC., d/b/a SAVARD LABOR & MARINE PERSONNEL, INC. | SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion by plaintiff Jonathan R. Meaux for summary judgment on seaman status, maintenance and cure, and the borrowed-employee doctrine.[1]  Defendants Cooper Consolidated LLC ("Cooper") and Savard Labor & Marine Personnel, Inc., d/b/a Savard Labor & Marine Personnel, Inc. ("Savard") (collectively, "Defendants") respond in opposition,[2] and Meaux replies in further support of his motion.[3]  Also, before the Court is Cooper's cross-motion for summary judgment on seaman status and maintenance and cure,[4] to which Meaux responds in opposition,[5] and Cooper replies in further support of its motion.[6]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons concluding that Meaux was a seaman and borrowed employee, but finding that there exist genuine issues of material fact precluding summary judgment on maintenance and cure.

---

[1] R. Doc. 17.
[2] R. Docs. 30 & 31.
[3] R. Doc. 36.
[4] R. Doc. 28.
[5] R. Doc. 37.
[6] R. Doc. 44.

# I.       BACKGROUND

This matter concerns a maritime personal injury.  In January 2019, Meaux was hired by Savard, a company that supplies workers to marine companies, to work at Cooper.[7]   Savard vetted Meaux by having him respond to an online questionnaire and take a drug test at Savard's office, which he passed.[8]   Throughout the relevant period, Savard paid Meaux, but Cooper controlled his work.[9]

On January 3, 2019, Meaux attended an orientation conducted by a Cooper employee at Cooper's office.[10]   He began work the next day as a flagger and utility man in the service of crane barges owned and operated by Cooper.[11]   Meaux was primarily assigned to Cooper's crane barge the *Bayou Special*, but also worked for Cooper's other crane barges, namely, the *High Tide*, *Bob Frane*, and two others.[12]   The mission of Cooper's crane barge fleet was the loading and unloading of ships and barges in the Mississippi River.[13]

On February 19, 2019, Meaux was working as a deckhand on the *Bayou Special*, which was in the Mississippi River adjacent to the Weber Marine facility in Convent, Louisiana.[14]   Meaux was helping the *Bayou Special*'s crane operator put covers on another barge when he was struck in the head with one of the barge covers that was dropped by the *Bayou Special*'s crane.[15]   Meaux sustained injuries to his neck and head and aggravated a pre-existing lower back condition.[16]

---

[7] R. Doc. 17-1 at 5.
[8] *Id.*
[9] *Id.* at 7.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.* at 5-6.
[13] *Id.* at 6.
[14] R. Doc. 4 at 3.
[15] R. Doc. 17-1 at 3.
[16] *Id.*

After the accident, Cooper, and then Savard, sent Meaux to a medical clinic where he was examined, given a drug test, and ultimately released to work.[17]   Meaux's supervisor at Cooper, Ricky Adams, refused to place Meaux on light duty.[18]   However, Meaux could not work, and with supervisor approval, "mostly just rested."[19]   Meaux stopped reporting to work on March 13, 2019.[20]   Meaux met with Savard's safety man, Ralph Frazier, on March 18, 2019, at Savard's office, and was fired shortly thereafter.[21]

Post-termination, Savard authorized Meaux to seek treatment from Dr. Najeeb Thomas, a neurosurgeon at Southern Brain & Spine in Metairie, Louisiana.[22]   On May 10, 2019, Dr. Thomas noted that Meaux was not able to work pending treatment for complaints of neck pain, with numbness and tingling in his hands, and lower back pain, all of which Meaux attributes to the February 19, 2019 accident.[23]   Dr. Thomas ordered MRI scans of Meaux's cervical and lumbar spine, which revealed new herniated discs at the C4-C5 level.[24]   The scans also showed a herniation at L5-S1, which was also present on an MRI scan Meaux had in 2012.[25]

Dr. Thomas treated Meaux's neck injury with a cervical epidural and physical therapy.[26] On July 18, 2019, with four sessions remaining, Meaux quit going to physical therapy, claiming that it was causing him too much pain.[27]

---

[17] *Id.* at 8.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 8-9.
[24] *Id.* at 9.
[25] *Id.*
[26] *Id.*
[27] *Id.*

Meaux saw Dr. Thomas again on September 3, 2019, and after an examination, the doctor noted that Meaux's herniated discs at C4-C5 and L5-S1 were symptomatic.[28]  Dr. Thomas told Meaux he could live with the pain or have a discectomy and arthroplasty.[29]  Meaux opted for surgery, which was performed on November 27, 2019.[30]  Thereafter, Meaux was supposed to participate in physical therapy.[31]  Savard paid for Meaux's medical care until December 2019.[32]

On February 10, 2020, Dr. Thomas requested that Savard authorize three months of post-surgical office visits and cervical x-rays.[33]  Savard refused, claiming that Meaux had not complied with his prescribed medical treatment by failing to attend physical therapy sessions both before and after his surgery.[34]  Savard also denied Dr. Thomas's request for reconsideration.[35]

Meaux filed this case against Savard and Cooper seeking redress for his injuries.[36]  Meaux alleges that he is a Jones Act seaman and Cooper's borrowed employee.[37]  Meaux seeks damages for negligence under the Jones Act, 46 U.S.C. § 30104, maintenance and cure, as well as punitive damages and attorney's fees for Cooper and Savard's failure to pay such benefits.[38]  Alternatively, in the event that the Court finds Meaux is not a Jones Act seaman, he seeks benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901, *et seq.*[39]

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at 9-10.
[31] *Id.* at 10.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] R. Doc. 4.
[37] *Id.* at 2.
[38] *Id.* at 5.
[39] *Id.* at 4.

4

## II.    PENDING MOTIONS

Meaux and Cooper filed cross-motions for summary judgment on seaman status, [40] as to which the material facts are not in dispute.  Instead, the parties view these facts from quite different perspectives.  Meaux contends that he is a Jones Act seaman because in his capacity as flagger and utility man, his duties contributed to the function and mission of Cooper's vessels, especially the *Bayou Special*.[41]   Further, Meaux argues that his connection to Cooper's vessels was substantial in duration and nature as he worked exclusively in the service of Cooper's vessels while exposed to the perils of the sea: thus, as a Jones Act seaman, his employer must provide him with maintenance and cure.[42]   Meaux contends that Cooper and Savard arbitrarily and capriciously ceased maintenance-and-cure payments, which makes them liable for his attorney's fees and punitive damages.[43]   Further, Meaux argues that he is Cooper's borrowed servant because Cooper had control over his work.[44]

Cooper and Savard, on the other hand, argue that Meaux is a longshoreman, not a seaman, because he did not have a connection to a vessel, or identifiable fleet of vessels, controlled by Cooper that was substantial in both nature and duration.[45]   Thus, Cooper contends that Meaux's remedy is workers' compensation under the LHWCA, not a negligence claim under the Jones Act.[46]   Cooper and Savard argue that Meaux is not entitled to maintenance and cure because he is not a seaman, and, in any event, he is not entitled to attorney's fees or punitive damages with respect to the employers' failure to pay maintenance and cure because he voluntarily stopped treatment and failed to disclose a prior medical condition in his employment

---

[40] R. Docs. 17 & 28.
[41] R. Doc. 17-1 at 15-17.
[42] *Id*. at 21-23.
[43] *Id*. at 23-24.
[44] *Id*. at 17-20.
[45] R. Doc. 28-1 at 2-20; R. Doc. 30 at 15-25; R. Doc. 31 at 4-7.
[46] R. Doc. 28-1 at 13-14; R. Doc. 30 at 25.

application.[47]   Further, Cooper argues that there are genuine issues of material fact that preclude summary judgment on the borrowed servant issue.[48]

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.   If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).   The substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

---

[47] R. Doc. 28-1 at 19; R. Doc. 31 at 4-15.
[48] R. Doc. 30 at 25-27.

"[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### A.  Seaman Status

Depending on the status of an injured worker and the allegedly responsible party, a maritime worker injured in the course and scope of his employment may bring an action under the Jones Act, the LHWCA, the general maritime law, or state law.  *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 355-56 (1995).   The Jones Act permits a "seaman injured in the course of employment ... to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104.   A Jones Act seaman may also bring a claim against his employer for maintenance and cure and unseaworthiness.  *See Becker v. Tidewater, Inc.,* 335 F.3d 376, 387 (5th Cir. 2003); *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015).  The LHWCA is a workers' compensation system and the exclusive remedy available to "a broad range of land-based maritime workers" who are injured in the course and scope of their employment, but are not seaman and thus not entitled to sue under the Jones Act.   *Chandris*, 515 U.S. at 355 (citing 33 U.S.C. § 902(3)(G)).

"Seaman" is not defined in the Jones Act.  *See* 46 U.S.C. § 30104.   The plaintiff must establish seaman status.  *Becker*, 335 F.3d at 390 n.8.  Determining "whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury."   *Id*. at 386.   However, a court may grant summary judgment when the undisputed facts demonstrate that the maritime worker clearly satisfies the criteria for seaman status.  *Hebert v. Weeks Marine, Inc*., 251 F. App'x 305, 307 (5th Cir. 2007).

"Though the Jones Act does not define 'seaman,' Congress has elsewhere defined it as the 'master or member of any crew of any vessel.'"  *Naquin v. Elevating Boats, L.L.C*., 744 F.3d 927, 932 (5th Cir. 2014) (citing *Chandris,* 515 U.S. at 355-56; 33 U.S.C. § 902(3)(G)).

However, not every "maritime worker on a ship at sea … is automatically a member of the crew of the vessel within the meaning of the statutory terms." *Chandris*, 515 U.S. at 363. Job title does not determine seaman status. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 558 (1997). But seamen "owe their allegiance to a vessel and not solely to a land-based employer." *Chandris*, 515 U.S. at 359 (quotation omitted). The "inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working aboard a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361. Moreover, "[i]n evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Id.* at 363 (quotation and citation omitted). "Thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." *Id.*

In *Chandris*, the Supreme Court established a two-prong test for seaman status. First, the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission." *Id.* at 368. Satisfying this prong of the seaman test is relatively easy because the individual "need only show that he does the ship's work." *Naquin,* 744 F.3d at 933 (quoting *Becker*, 335 F.3d at 387-88) "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'" *Becker*, 335 F.3d at 387-88 (quoting *Chandris*, 515 U.S. at 368).

Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."

*Chandris*, 515 U.S. at 368. The claimed connection to a vessel or fleet of vessels must be "temporally, more than fleeting, and, substantively, more than incidental," because

> the fundamental purpose of the substantial connection requirement is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."

*Naquin*, 744 F.3d at 933 (quoting *Chandris*, 515 U.S. at 368). "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Chandris*, 515 U.S. at 370.

In determining the durational aspect of the vessel-connection requirement, the Supreme Court has adopted the Fifth Circuit's general rule of thumb that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. The Supreme Court explained that this figure:

> serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, the inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.

*Id.* (quotation and citation omitted).

In determining whether an employee has a substantial connection to a vessel in navigation in terms of its nature, again, "it is not the employee's particular job that is determinative of seaman status, but the employee's connection to the vessel." *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) (quoting *Chandris*, 515 U.S. at 364). Therefore, an employee will qualify for seaman status if the employee's connection to a vessel "regularly exposes him to the perils of the sea." *Id.* (explaining *Harbor Tug*, 520 U.S. at 554-55). Further,

an employee may still be exposed to the perils of the sea despite limited experience in the open water; workers involved in a vessel's work near shore "still remain exposed to the perils of a maritime work environment." *Naquin*, 744 F.3d at 934 (rejecting "the categorical assertion that workers who spend their time aboard vessels near the shore do not face maritime perils").

Meaux and Cooper pose fundamentally different arguments regarding how the test for seaman status applies to the facts of this case. Meaux argues that he was a sea-based employee who spent all of his time at Cooper working over water in the service of the Cooper barges to which he was assigned, most often the *Bayou Special*, performing jobs that contributed to the barge's mission of loading and unloading non-Cooper vessels on the Mississippi River – much of the time onboard the non-Cooper vessels, but responsible for signaling the crane operators on the Cooper barges to ensure the barges' safe accomplishment of their mission.[49]

Cooper, on the other hand, argues that Meaux fails the vessel-connection requirement of the *Chandris* test for seaman status.[50] Cooper maintains that Meaux was a land-based employee because he was doing traditional longshore work.[51] In addition, Cooper devotes many pages of its memoranda to analyzing the amount of time Meaux spent physically onboard Cooper's vessels, and contends that the aggregate does not approach the 30 percent threshold to establish the requisite duration.[52] Thus, Cooper argues that Meaux cannot satisfy the second prong of *Chandris*.[53]

---

[49] R. Doc. 17-1 at 13-17.
[50] R. Doc. 28-1 at 1-19.
[51] *Id.*
[52] *Id.*; R. Doc. 30 at 2-11.
[53] R. Doc. 28-1 at 1-19; R. Doc. 30 at 15-25. Savard advances the same position. R. Doc. 31 at 4-7.

The Court concludes that Meaux's analysis is correct: he was a sea-based employee. All of his work was performed over water while in the service of a Cooper vessel, thereby advancing the cargo-handling function and mission of the vessel. Thus, the first prong of the *Chandris* test is met.

The dispute between the parties centers on the second prong of *Chandris*, and the sufficiency of Meaux's connection to Cooper's barges in terms of its nature and duration. With respect to duration, there is no summary-judgment evidence that Meaux did **any** work on land or as a crewmember of any non-Cooper vessel, so as to make the *Chandris* 30-percent analysis relevant. All of Meaux's work was performed as a crewmember of a Cooper barge. Thus, no hours tallying is necessary to conclude that the durational aspect of the vessel-connection requirement is readily satisfied. Nevertheless, Cooper and Savard go to great lengths to analyze the percentage of time Meaux physically spent aboard the Cooper barges as opposed to the time he was physically positioned on the non-Cooper vessels being loaded and unloaded to perform his assigned duties as a signalman for the crane operators on the Cooper barges. In doing so, Cooper and Savard miss the point: the purpose of the duration test is to determine whether the employee's attachment to a vessel was substantial. Here, Meaux's was since it was permanent: for the entire period of his employment, he was assigned as a crewmember to one of Cooper's barges (except for a brief period of training). This is not an instance (like cases involving wireline operators or similar itinerant maritime workers) in which an employee might have multiple transitory and different assignments to many distinct, unrelated vessels over the course of his or her employment. *See, e.g., Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933, 943 (5th Cir. 1987) (pre-*Chandris*: "[I]tinerant wireline workers are not Jones Act seamen" because "they usually have no permanent relationship with a particular vessel or fleet of vessels."); *Lirette v.*

*N.L. Sperry Sun, Inc.*, 831 F.2d 554, 557 (5th Cir. 1987) (pre-*Chandris*: wireline operator not a seaman because his duties, which involved performing "one specialized job for may different vessels," "closely resembled those of a transitory maritime worker," and not a seaman permanently assigned to an identifiable vessel); *Langston v. Schlumberger Offshore Servs., Inc.*, 809 F.2d 1192, 1194 (5th Cir. 1987) (pre-*Chandris*: wireline operator who had performed 18 jobs for 10 unrelated owners aboard 15 distinct vessels was not a seaman). Instead, even while physically located on the non-Cooper vessels, just yards away from and always visible to the Cooper barges, Meaux was still doing the work of the Cooper barges as a permanently-assigned member of their crews.

Likewise, Meaux easily satisfies the requirement that his connection to the Cooper barges was substantial in nature. In *Endeavor Marine*, the Fifth Circuit held that a crane operator who worked "onboard a vessel whose sole purpose is to load and unload cargo vessels" was a seaman because his connection to the vessel was substantial in nature in that in performing his work he was regularly exposed to the perils of the sea. 234 F.3d at 291-92; *see also Naquin*, 744 F.3d at 934-35 (vessel repair supervisor was a seaman because his "primary job duties were performed doing the ship's work on vessels docked or at anchor in navigable water," which thus exposed him to the perils of the sea). As with the employee in *Phelps v. Bulk III Inc.*, 2007 WL 3244723 (E.D. La. Nov. 1, 2007), Meaux's work as a flagger and utility man assisting in the loading and unloading operations of the crane barges to which he was assigned placed him over water, whether onboard the Cooper barges or the third-party vessels they were loading or unloading, thereby exposing Meaux to the perils of the sea. In *Phelps* the court noted that a crane barge crewmember had seaman status even if he did "traditional longshore work" because loading and unloading cargo was the barge's primary purpose. *Id.* at *4. The same is true for Meaux.

In sum, Meaux qualifies for seaman status because he contributed to the mission and function of Cooper's barges and his connection to them was substantial in nature and duration. On the question of seaman status, then, Meaux's motion for summary judgment is GRANTED, and Cooper's motion is DENIED.

### B. Maintenance and Cure

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). "Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). Maintenance entitles a seaman to a daily living allowance for food and lodging, provided that he incurred the expense. *See In re 4-K Marine*, *L.L.C.,* 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 586-57 (5th Cir. 2001). Cure entitles a seaman to necessary medical services. *See Guevara v. Maritime Overseas Corp*., 59 F.3d 1496, 1499 (5th Cir. 1995).

An employer's obligation to pay maintenance and cure ends when the seaman reaches maximum medical improvement, meaning when his condition is cured or will not improve with further treatment. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975); *McBride v. Estis Well Serv., L.L.C.*, 853 F.3d 777, 783 (5th Cir. 2017). The amount and duration of required maintenance-and-cure payments are questions of fact, as they are generally particular to the injury, recovery, and location. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 517-18 (5th Cir. 1986). Doubts as to whether a seaman has the right to maintenance and cure "are resolved in favor of the seaman."

*Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962).

When an employer receives a demand for maintenance, it is not required to immediately begin payments, but rather it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). In addition, an employer "is allowed to rely on certain legal defenses to deny a claim for maintenance and cure." *Johnson*, 544 F.3d at 301 (citing *Brown*, 410 F.3d at 171). One of these defenses was articulated by the Fifth Circuit in *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968). To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the seaman; and (3) a causal connection exists between the withheld information and the injury complained of in the lawsuit. *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

However, if the shipowner unreasonably refuses payment, it becomes liable not only for the maintenance-and-cure payments, but also for compensatory damages. *Morales*, 829 F.2d at 1358. Moreover, if the refusal is not only unreasonable but "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent," the shipowner may also be liable for punitive damages and attorney's fees. *Id.* (citations omitted); *see also Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009); *Vaughan*, 369 U.S. at 530-31. Such behavior includes "(1) laxness in investigating a claim, (2) termination of benefits in response to the seaman's retention of counsel or refusal or a settlement offer, and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." *Verret v. Daigle Towing Servs., LLC*, 2019 WL 77237, at

*2 (E.D. La. Jan. 2, 2019) (citing *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985)); *see also Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir. 1984). If, however, after a diligent investigation, the shipowner determines that the claim is unsupported or illegitimate, then the failure to pay is reasonable. *McWilliams*, 781 F.2d at 518-20; *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La. 2013).

The Fifth Circuit has explained that "[n]o bright line separates the type of conduct that properly grounds an award of punitive damages … from the type of conduct that does not," but that such an award "requires an element of bad faith." *Harper v. Zapata*, 741 F.2d 87, 90 (5th Cir. 1984); *Alexander v. CHS Inc. of Minn.* 2018 WL 3548484, at *4 (E.D. La. July 24, 2018). Whether the refusal to pay benefits based on a medical report was done in bad faith is a question of fact for trial. *Tullos*, 750 F.2d at 388-98. Further, when there are unclear and inconsistent medical diagnoses and prognoses, the question whether the failure to pay maintenance and cure was arbitrary and capricious is also one for trial. *Id.* at 388; *Alexander*, 2018 WL 3548484, at *4.

Meaux argues that, as a Jones Act seaman, he is entitled to maintenance and cure from Savard or Cooper.[54]   Savard paid maintenance from May 10, 2019, until February 7, 2020, and cure through February 10, 2020.[55]   However, Meaux argues that Savard's reason for terminating the benefits – Meaux's alleged non-compliance with prescribed physical therapy – is not a legally cognizable reason to discontinue the payments, nor is it supported by the facts.[56]   Meaux contends that his doctor authorized him to skip physical therapy in the summer of 2019 because of pain, and that he missed it in the winter of 2020 due to "flu-like symptoms" that he speculates

---

[54] R. Doc. 17-1 at 22-23.
[55] *Id.* at 22.
[56] *Id.* at 22-23.

may have been COVID-19.[57]   Meaux argues that Savard's termination of benefits was willful and in callous disregard of the fact that he has not reached maximum medical improvement.[58] Moreover, Cooper, who Meaux argues is also liable for maintenance and cure as his borrowed employer, has willfully refused to pay any such benefits.[59]   As such, Meaux argues that he is entitled to attorney's fees and punitive damages.[60]

In opposition, Savard argues that it had objective evidence to support the termination of maintenance and cure.[61]   Specifically, Savard argues that Meaux stopped treatment by refusing to go to physical therapy, which ended its obligation to pay maintenance and cure.[62]   Savard contends that when Meaux stopped attending physical therapy, it appeared that he ceased treatment, and there is no medical evidence to support Meaux's claim of "flu-like" symptoms.[63] Savard also raises the *McCorpen* defense, arguing that Meaux forfeited his entitlement to maintenance and cure by failing to disclose a pre-existing back injury prior to his employment.[64]

Considering the unresolved facts and consequent need to make credibility determinations concerning Meaux's discontinuation of physical therapy, the reasons he stopped attending appointments, and Meaux's pre-existing back injury, as well as the legal ramifications of these facts, summary judgment on Meaux's entitlement to maintenance and cure, along with any right to punitive damages and attorney's fees for his employers' alleged willful failure to pay the benefits, is inappropriate at this stage of the litigation.   As a result, Meaux's motion for summary

---

[57] *Id.*

[58] *Id.* at 24.

[59] *Id.*

[60] *Id.*

[61] Cooper and Savard also argue that Meaux is not entitled to maintenance and cure, or attendant attorney's fees and punitive damages, because he is not a seaman. R. Doc. 28-1 at 13-20; R. Doc. 31 at 7.  However, this Court has concluded that Meaux was a seaman.  As a result, Cooper's motion for summary judgment on the question of maintenance and cure is DENIED.

[62] R. Doc. 31 at 8-11.

[63] *Id.*

[64] *Id.* at 12-15.

judgment is DENIED as to his entitlement to maintenance and cure and to attorney's fees and punitive damages for his employers' alleged failure to pay such benefits.

### C. Borrowed Employee

Under the borrowed servant doctrine, "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Total Marine Servs., Inc. v. Director, Office of Worker's Comp. Programs*, 87 F.3d 774, 777 (5th Cir. 1996) (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909)) (emphasis omitted). A borrowed servant is considered the employee of the borrowing employer and is treated as such. *Denton v. Yazoo & M.V. Ry. Co.*, 284 U.S. 305, 308-09 (1932). The Fifth Circuit has held that the following nine factors must be considered in determining borrowed-employee status:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work was being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished tools and place for performance?
>
> (7) Was the new employment over a considerable length of time?
>
> (8) Who had the right to discharge the employee?
>
> (9) Who had the obligation to pay the employee?

*Mays v. Director, Office of Workers' Comp. Programs*, 938 F.3d 637, 641-42 (5th Cir. 2019) (citing *Ruiz v. Shell Oil Co.*, 413 F.3d 310, 313 (5th Cir. 1969)).  No one factor is determinative, but the power to control another person is the "central" issue of borrowed-employee status.  *Id.* at 642 (citation omitted).  "[B]orrowed-employee status is a question of law for the district court to determine."  *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).  "But, in some cases, factual disputes must be resolved before the district court can make its legal determination."  *Id.*

Meaux contends that he is Cooper's borrowed servant, and thus, Cooper, as his Jones Act employer, owes him maintenance and cure.[65]  While acknowledging that he had a continuous relationship with Savard when he was working for Cooper, that Savard paid his salary, and that both Savard and Cooper could fire him, Meaux argues that all the other *Ruiz* factors point to Cooper's being his employer.[66]  Meaux maintains he was doing Cooper's work, over which Cooper had control, and Cooper furnished him with the tools to perform his job.[67]  Further, says Meaux, he acquiesced in the work situation, which was dictated by a staffing agreement between Cooper and Savard.[68]  Indeed, he understood that he was being hired by Savard to work only for Cooper.[69]

Cooper acknowledges that it was in control of Meaux's work.[70]  But, Cooper argues that there are genuine issues of material fact pertaining to factors three, five, six, eight, and nine, that preclude summary judgment.[71]  With respect to the third factor, Cooper argues that there is a provision in its contract with Savard that states that personnel assigned to Cooper under the contract shall not be considered Cooper's employees for any purpose, but Cooper does not

---

[65] R. Doc. 17-1 at 17-20.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] R. Doc. 30-1 at 30.
[70] R. Doc. 30 at 25-27.
[71] *Id.* at 26-27.

submit the contract as summary-judgment evidence.[72]   Cooper, citing Meaux's deposition, also argues that there are genuine issues of fact as to whether Savard or Cooper supplied tools to Meaux (the sixth factor).[73]   Further, Cooper argues that in light of the third and sixth factors, and because the fifth, eighth, and ninth factors are neutral, summary judgment in Meaux's favor is not warranted.[74]  The Court disagrees.

Weighed as a whole, the balance of the *Ruiz* factors points to  Meaux's being Cooper's borrowed  employee.   The first, second, fourth, and seventh factors  are not in dispute and unquestionably favor the conclusion that Meaux was Cooper's borrowed employee.   Meaux, with his knowledge and consent, worked exclusively for Cooper performing Cooper's work for the entire time he was employed by Savard.   Thus, as regards the central issue, Cooper controlled Meaux and the work he was performing.

The sixth factor, who provided the tools, also leans in favor of borrowed-employee status. In his deposition, Meaux testified that Cooper provided him with a hardhat, gloves, safety glasses, and a work vest.[75]   Meaux also testified that Savard provided safety glasses, and he was a little inconsistent as to whether Savard gave him a safety vest.[76]  On balance, however, even with these minor discrepancies, Cooper provided more of the tools for Meaux's job, including, most significantly, the crane barges and other tools Meaux undoubtedly used while working in service of Cooper's barges.   Thus, the sixth factor favors borrowed-employee  status.

---

[72] *Id*. at 25.
[73] *Id*. at 26.
[74] *Id*. at 26-27.
[75] R. Doc. 30-1 at 31.
[76] *Id*. at 33.

Cooper admits that the fifth, eighth, and ninth factors are neutral.  The remaining factor, the third *Ruiz* question, whether there was an agreement between Savard and Cooper regarding borrowed-employee status, is an open question of fact.  Cooper cites to a provision in its contract with Savard that purportedly prevents Cooper from being Meaux's borrowed employer.  Although "[t]he existence of a contract provision purporting to prohibit borrowed employee status could create a factual dispute on the third factor, … summary judgment is appropriate when the remaining factors clearly point to borrowed-employee status."  *Crews v. FAE LLC*, 2020 WL 1695076, at * 2 (W.D. La. Apr. 7, 2020) (citing *Billizon*, 993 F.2d at 105).

Here, most of the factors, including the central issue of control, point to borrowed-employee status.  Five factors favor borrowed-employee status, three factors are neutral, and none cuts against borrowed-employee status.  Thus, even presuming a dispute regarding the contract, there are more than enough undisputed material facts before the Court to conclude that Meaux was Cooper's borrowed employee as a matter of law.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Meaux's motion for summary judgment (R. Doc. 17) is GRANTED as to his status as a Jones Act seaman and Cooper's borrowed employee, and otherwise DENIED.

IT IS FURTHER ORDERED that Cooper's motion for summary judgment (R. Doc. 28) is DENIED.

New Orleans, Louisiana,  this 6th day of August, 2020.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE