UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHON R. MEAUX | CIVIL ACTION |
| VERSUS | NO. 19-10628 |
| COOPER CONSOLIDATED, LLC AND SAVARD MARINE SERVICES INC., d/b/a SAVARD LABOR & MARINE PERSONNEL, INC. | SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion by defendant Cooper Consolidated, LLC ("Cooper") for reconsideration or, alternatively, to certify interlocutory appeal,[1] of this Court's August 6, 2020 Order & Reasons (the "O&R") holding that plaintiff Jonathon R. Meaux is a Jones Act seaman.[2] Meaux responds in opposition,[3] and Cooper replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Cooper's motion.

**I. BACKGROUND**

This matter concerns a maritime personal injury. The pertinent facts and procedural history of this case were fully recited in the O&R,[5] and will not be restated herein. In the O&R the Court held that Meaux is a Jones Act seaman because he satisfied the *Chandris* test.[6] The Court held that Meaux's work as a flagger and utility man contributed to the cargo-handling function of Cooper's crane barges and to the accomplishment of the barges' mission of loading

---

[1] R. Doc. 46.
[2] R. Doc. 44.
[3] R. Doc. 51.
[4] R. Doc. 55.
[5] R. Doc. 44 at 2-4.
[6] *Id.* at 8-14 (applying the test articulated in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995)).

and unloading ships and barges in the Mississippi River.[7]  Further, the Court held that Meaux's connection to Cooper's barges was substantial in terms of both its nature and duration because, for the entire period of his employment with Cooper (except orientation), he was always assigned to Cooper's barges to assist in their cargo handling, even when physically aboard the non-Cooper cargo vessels to perform his duties of signaling the crane operators on Cooper's barges to safely load and unload the vessels, and this work regularly exposed him to the perils of the sea (the Mississippi River).[8]

## II. PENDING MOTION

Cooper moves for reconsideration arguing that the Court erred by holding that Meaux satisfied the duration prong of the *Chandris* test even though he did not spend 30% of his total time employed by Cooper physically aboard the Cooper barges.[9]  Cooper argues that Meaux could not have been permanently assigned to the Cooper barges because he spent only 13.93% of his time aboard them, and thus, did not have a substantial connection to Cooper's barges in terms of duration.[10]  Cooper further argues that Meaux's connection to Cooper's barges was not substantial in terms of its nature because he was doing classic longshore work and was not exposed to the perils of the open seas.[11]  In the alternative, Cooper argues that the question of Meaux's seaman status should be certified to the Fifth Circuit for immediate appeal because the issue is central to the case.[12]

In opposition, Meaux argues that this Court correctly held that he is a seaman for all the reasons stated in the O&R.[13]  Meaux argues that throughout his employment by Cooper he was always assigned to Cooper barges to assist in their sea-based work of loading and unloading

---

[7] *Id.* at 11-12.
[8] *Id.* at 12-14.
[9] R. Docs. 46-1 at 4-13; 55 at 1-10.
[10] R. Docs. 46-1 at 4-13; 55 at 1-10.
[11] R. Doc. 46-1 at 13-18.
[12] *Id.* at 18-19.
[13] R. Doc. 51 at 1-9.

cargo vessels in the river, and there was no land-based work involved as would require a detailed hours analysis to determine whether he had a substantial connection to the barges in terms of duration.[14] Meaux further argues that it does not matter that his work was not "classic seaman's work" and that his cargo handling on the Mississippi River exposed him to the perils of the sea.[15] Finally, Meaux argues that the criteria for an interlocutory appeal are not met because the O&R does not involve a controlling question of law as to which there is a substantial ground for difference of opinion.

### III. LAW & ANALYSIS

#### A. Reconsideration and Seaman Status

Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Unlike motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting 'the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)) (internal citations and quotations omitted). However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders

---

[14] *Id.* at 4-7.
[15] *Id.* at 7-8.

and the resulting burdens and delays. *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alterations, internal quotation marks, and citation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019).

Cooper's central argument in its motion is that the Court should have counted only the hours Meaux spent aboard a Cooper vessel and found that the total was not enough to satisfy the duration prong of the *Chandris* test. In the O&R the Court was careful to apply the *Chandris* test but explained that it was unnecessary to confine the hours tallied to only those Meaux spent aboard Cooper's barges because (1) there was no summary-judgment evidence that he did any land-based work or was ever assigned as a crewmember of a non-Cooper vessel; and (2) all of Meaux's work was performed when assigned to the Cooper barges, in furtherance of their mission, even if his signaling duties were performed while he was physically aboard the non-Cooper vessels being loaded and unloaded by Cooper's crane barges.[16] Thus, Meaux's connection to the Cooper vessels was substantial (very nearly 100% of his time), not sporadic, transitory, or intermittent.[17]

To graft a physical-location requirement onto the duration prong of the *Chandris* test,

---

[16] R. Doc. 44 at 12-14.
[17] *Id.* In an hours analysis, the only time that might be excluded is the time Meaux spent in orientation, which Cooper calculates as 2.27% of his total time worked during the applicable period, leaving 97.73% of his time spent in the service of the Cooper barges. R. Doc. 30 at 10-11.

Cooper pulls language from the Fifth Circuit's pre-*Chandris* decision in *Barrett v. Chevron USA, Inc.*, 781 F.2d 1067, 1073-74 (5th Cir. 1986) ("We have said that, in order to prove 'substantial work' equivalent to permanent assignment 'it must be shown that [the claimant] performed a significant part of his work *aboard* the vessel with at least some degree of regularity and continuity.") (emphasis added).[18] Yet, this language is not a part of the *Chandris* test, which purposefully absorbed the Fifth Circuit's rule of thumb but not any physical-location requirement, by articulating the temporal test in this way: "A worker who spends less than about 30 percent of his time *in the service of a vessel in navigation* should not qualify as a seaman under the Jones Act."[19] *Chandris*, 515 U.S. at 371 (emphasis added). Significantly, Cooper does not dispute that Meaux's work was "in the service" of its crane barges, instead urging that his physical location on the non-Cooper vessels, while doing the work of the Cooper barges to which he was assigned, deprives him of seaman status.[20] However, notwithstanding Cooper's vigorous argument to the contrary, seaman status turns on being "in the service" of the vessel or fleet of vessels, not physical location.[21] Thus, since both parties agree that Meaux's entire employment with Cooper (except orientation) was spent aboard Cooper's barges or the vessels they were

---

[18] R. Doc. 46-1 at 4-6.

[19] Thus, while "[t]he Supreme Court in a series of cases beginning in 1991 essentially accepted th[e Fifth] Circuit's seaman status test," *Nunez v. B&B Dredging, Inc.*, 288 F.3d 271 (5th Cir. 2002), it did not adopt the precise language of the test set out in *Barrett*, including, specifically, the language Cooper invokes for grafting a physical-location requirement onto the duration prong.

[20] R. Doc. 46-1 at 12 (where Cooper argues: "While Plaintiff may have worked 'in the service' of Cooper Consolidated's crane barges, he did not physically work aboard these vessels.").

[21] Cooper's citation to *Nunez* is unavailing. R. Doc. 55 at 7-10. In *Nunez*, the Fifth Circuit held that an employee who performed 90% of his work on land and just 10% on a vessel failed the duration prong of *Chandris* and was not a seaman though his land-based work as a dredge dump foreman contributed to the function and mission of the vessel. In contrast, nearly 100% of Meaux's time was spent onboard vessels advancing the function and mission of the crane barges to which he was assigned – which were *all* owned and operated by Cooper. These facts also render illusory Cooper's parade of horribles suggesting that the Court's decision means "every stevedore, barge cleaner and repairman working on vessels now satisfies the 'duration prong' of the *Chandris* test irrespective of whether those vessels are under common ownership or control." R. Doc. 55 at 5. There is no dispute that Cooper's crane barges were under its common ownership or control, and these are the operative vessels for the purpose of applying the *Chandris* test to Meaux, not the cargo vessels the crane barges were loading or unloading.

loading or unloading while "in the service" of the mid-stream cargo-handling function and mission of the Cooper crane barges, Meaux has satisfied the duration prong of the *Chandris* test.

Cooper takes exception to the Court's description of Meaux as an assigned crewmember of the Cooper barges, but it presents no summary-judgment evidence to the contrary. It is undisputed that Meaux, a Savard employee, was hired by Cooper (a borrowed employee), not by any of the owners or operators of the non-Cooper vessels, to assist the Cooper crane barges in performing their cargo-handling function – that is, to act "in the service" of the crane barges. Thus, Meaux is not like those employees in the cases cited by Cooper who were hired on an "as-needed" basis from a union hiring hall or randomly tasked to perform work only in the service of vessels not owned by their employers. *See, e.g., Jones v. Cooper/T. Smith Stevedoring Co.*, 2009 WL 322154, at *5 (E.D. La. Feb. 9, 2009); *Moore v. AEP Memco LLC*, 2008 WL 3851574, at *4 (E.D. La. Aug. 13, 2008). It is also undisputed that Meaux frequently performed deckhand duties aboard the Cooper crane barges before boarding the non-Cooper vessels to perform his signaling duties during loading operations. In this way, Meaux served as an assigned crewmember of Cooper's fleet of crane barges. *See, e.g., Palmer v. Fayard Moving & Transp. Corp.*, 930 F.2d 437, 439 (5th Cir. 1991) (an employee's "status as a crew member is determined 'in the context of his entire employment' with his current employer").

Further, the label put on Meaux's work – longshore or seaman duties – is irrelevant because he was doing the barges' work whether as a deckhand or utility man on the barges, or as a flagman, signalman, or spotter for the crane operators. *See, e.g., Phelps v. Bulk III Inc.*, 2007 WL 3244723, at *4 (E.D. La. Nov. 1, 2007) (employee assigned to crane barge was seaman even if he did "traditional longshore work" because loading and unloading cargo was barge's primary purpose). Moreover, the Fifth Circuit has held that exposure to the Mississippi River is exposure to the perils of the sea. *In re Complaint of Endeavor Marine, Inc.*, 234 F.3d 287, 292 n.3 (5th

Cir. 2000).

In sum, the Court has already considered Cooper's arguments in connection with the O&R, and nothing in the present motion warrants that the O&R's conclusion should be reconsidered.

### B. Certification for Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292(b), a district judge can certify an issue for interlocutory appeal under certain circumstances:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order ….

Thus, a party moving for interlocutory appeal in the district court must demonstrate that (1) the court's order involved a controlling question of law, (2) there is substantial ground for difference of opinion about the question of law, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). All three criteria must be satisfied for an order to be certified for interlocutory appeal. *See Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). Interlocutory review is generally reserved for "exceptional" cases, because the basic structure of appellate jurisdiction disfavors piecemeal appeals. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996).

Here, Cooper has not demonstrated that interlocutory appeal is warranted. The issue of seaman status cannot be said to present a controlling issue of law as to which there is a substantial ground for difference of opinion. *See, e.g., Ausama v. Tetra Applied Techs., LP*, 2006 WL 8456267, at *3 (E.D. La. July 10, 2006). The law is clear. *Id.* (citing *Chandris*). The

parties do not dispute the law to be applied. Instead, Cooper takes issue with the Court's application of that law to the facts, which is not enough to satisfy the criteria for interlocutory appeal under § 1292(b).

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Cooper's motion for reconsideration or, alternatively, to certify interlocutory appeal (R. Doc. 46) is DENIED.

New Orleans, Louisiana, this 10th day of September, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE