UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHON MEAUX                                          CIVIL ACTION

VERSUS                                                  NO. 19-10628

COOPER CONSOLIDATED, LLC,                               SECTION M (5)
AND SAVARD MARINE SERVICES,
INC. d/b/a SAVARD LABOR &
MARINE PERSONNEL, INC.

**ORDER & REASONS**

Before the Court is a motion by defendant Savard Marine Services, Inc. d/b/a Savard Labor & Marine Personnel, Inc. ("Savard") for summary judgment dismissing plaintiff's maintenance-and-cure claim against it.[1] Plaintiff Jonathon Meaux responds in opposition,[2] and Savard replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Savard's motion because there are disputed issues of material fact that preclude summary judgment.

**I.    BACKGROUND**

This matter concerns a maritime personal injury. In January 2019, Meaux was hired by Savard, a company that supplies workers to marine companies, to work for Cooper.[4] Savard vetted Meaux by having him respond to an online medical questionnaire and take a drug test at Savard's office, which he passed.[5] On the medical form, Meaux indicated that he did not have a ruptured or herniated disc.[6]

---

[1] R. Doc. 82.
[2] R. Doc. 90.
[3] R. Doc. 97. Co-defendant Cooper Consolidated, LLC ("Cooper") joins in Savard's motion by way of this reply.
[4] R. Doc. 17-1 at 5.
[5] *Id.*
[6] R. Doc. 82-5 at 42.

On February 19, 2019, Meaux was working as a deckhand on Cooper's barge, *Bayou Special*, which was in the Mississippi River adjacent to the Weber Marine facility in Convent, Louisiana.[7] Meaux was helping the *Bayou Special*'s crane operator put covers on a barge when he was struck in the head with another barge cover that was being lowered by the *Bayou Special*'s crane.[8] Meaux sustained injuries to his neck and head and aggravated a pre-existing lower back condition.[9]

After the accident, Cooper, and then Savard, sent Meaux to a medical clinic where he was examined, given a drug test, and ultimately released to work.[10] Meaux's supervisor at Cooper, Ricky Adams, refused to place Meaux on light duty.[11] However, Meaux could not work, and with supervisor approval, "mostly just rested."[12] Meaux stopped reporting to work on March 13, 2019.[13] Meaux met with Savard's safety man, Ralph Frazier, on March 18, 2019, at Savard's office, and was fired shortly thereafter.[14]

Post-termination, Savard authorized Meaux to seek treatment from Dr. Najeeb Thomas, a neurosurgeon at Southern Brain & Spine in Metairie, Louisiana.[15] On May 10, 2019, Dr. Thomas noted that Meaux was not able to work pending treatment for complaints of neck pain, with numbness and tingling in his hands, and lower back pain, all of which Meaux attributes to the February 19, 2019 accident.[16] Dr. Thomas ordered MRI scans of Meaux's cervical and lumbar

---

[7] R. Doc. 4 at 3.
[8] R. Doc. 17-1 at 3.
[9] *Id.*
[10] *Id.* at 8.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 8-9.

spine, which revealed new herniated discs at the C4-C5 level.[17] The scans also showed a herniation at L5-S1, which was also present on an MRI scan Meaux had in 2012.[18]

Dr. Thomas treated Meaux's neck injury with a cervical epidural and physical therapy.[19] On July 18, 2019, with four sessions remaining, Meaux quit going to physical therapy, claiming that it was causing him too much pain.[20]

Meaux saw Dr. Thomas again on September 3, 2019, and after an examination, the doctor noted that Meaux's herniated discs at C4-C5 and L5-S1 were symptomatic.[21] Dr. Thomas told Meaux he could live with the pain or have a discectomy and arthroplasty.[22] Meaux opted for cervical neck surgery, which was performed on November 27, 2019.[23] Thereafter, Meaux was supposed to participate in physical therapy.[24] Savard paid for Meaux's medical care until December 2019.[25]

On February 10, 2020, Dr. Thomas requested that Savard authorize three months of post-surgical office visits and cervical x-rays.[26] Savard refused, claiming that Meaux had not complied with his prescribed medical treatment by failing to attend physical therapy sessions both before and after his surgery.[27] Savard also denied Dr. Thomas's request for reconsideration.[28]

In the meantime, on May 22, 2019, Meaux had commenced this case against Savard and Cooper seeking redress for his injuries.[29] Meaux seeks damages for negligence under the Jones

---

[17] *Id.* at 9.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 9-10.
[24] *Id.* at 10.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] R. Docs. 1 at 3; 4 at 3.

Act, 46 U.S.C. § 30104, maintenance and cure, as well as punitive damages and attorney's fees for Cooper and Savard's failure to pay such benefits.[30] In a prior Order & Reasons, this Court held that Meaux is a Jones Act seaman and Cooper's borrowed employee.[31] The Court also held that disputed issues of material fact precluded summary judgment on Meaux's entitlement to further maintenance-and-cure payments due to his alleged failure to attend recommended treatments and his non-disclosure of a pre-existing lower back condition.[32]

## II.   PENDING MOTION

Asserting the *McCorpen* defense, Savard now seeks dismissal of Meaux's maintenance-and-cure claim related to the injury to his lumbar spine, *i.e.*, lower back.[33] Savard argues that Meaux is not entitled to maintenance and cure for his alleged lumbar spine injury because he failed to disclose his prior history of lower back injuries on Savard's preemployment questionnaire, the questionnaire was material to Savard's decision to hire Meaux, and there is a causal connection between his prior and current injuries.[34] Savard also seeks dismissal of Meaux's maintenance-and-cure claim related to his cervical spine injury because Meaux voluntarily stopped treatment for that injury.[35]

Meaux responds that summary judgment is not appropriate because Savard has not conclusively established the three prongs of the *McCorpen* defense.[36] Meaux argues that, although he knew he had lower back pain, he did not know that he had a ruptured or herniated disk, so his answer to that specific question did not constitute intentional concealment.[37] Moreover, Meaux

---

[30] R. Doc. 4 at 3-7.
[31] R. Doc. 44.
[32] *Id.*
[33] R. Doc. 82-1 at 1-14.
[34] *Id.*
[35] *Id.* at 15-18.
[36] R. Doc. 90 at 16-19.
[37] *Id.* at 9.

argues that there are credibility determinations that must be made as to his ceasing treatment, and thus, as this Court has already ruled, Meaux's entitlement to maintenance and cure for his cervical spine injury is not ripe for summary judgment.[38]

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC*

---

[38] *Id.* at 16-19.

*v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

## B. Maintenance and Cure

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). "Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994)). Maintenance entitles a seaman to a daily living allowance for food and lodging. *See In re 4-K Marine, L.L.C.*, 914 F.3d 934, 937 (5th Cir. 2019); *Hall v. Noble Drilling*, 242 F.3d 582, 586 (5th Cir. 2001). Cure entitles a seaman to necessary medical services. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).

When an employer receives a demand for maintenance, it is not required to immediately begin payments, but rather it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). In addition, an employer "is allowed to rely on certain legal defenses to deny a claim for maintenance and cure." *Johnson*, 544 F.3d at 301 (citing *Brown*, 410 F.3d at 171). One of these defenses was articulated by the Fifth Circuit in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). To establish the *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the seaman; and (3) a causal connection exists between

7

the withheld information and the injury complained of in the lawsuit. *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

### 1. Lumbar Spine Injury – Intentional Concealment

The first prong of *McCorpen* is satisfied "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired." *McCorpen*, 396 F.2d at 549; *see Wimberly v. Harvey Gulf Int'l Marine, LLC*, 126 F. Supp. 3d 725, 732 (E.D. La. 2015) ("Failure to truthfully answer medical questions or expound upon a condition when requested by the employer in a medical questionnaire test can forfeit a seaman's right to maintenance and cure."). The "intentional concealment prong of *McCorpen* is an essentially objective inquiry" which "neither necessarily turns on credibility nor requires a subjective determination." *Brown*, 410 F.3d at 174-75.

Savard argues that the first prong of *McCorpen* is met because Meaux failed to disclose his prior history of lower back issues, particularly a ruptured or herniated disk.[39] Savard asserts that its preemployment medical questionnaire specifically asks if the applicant has a ruptured or herniated disk, to which Meaux answered no.[40] Savard contends that this answer was false because Meaux admits he has had lower back pain since 2012 for which he was taking Suboxone.[41] In 2012, Meaux had an MRI that showed a left paracentral disc herniation at the L5-S1 level.[42] Meaux was informed that the MRI results were abnormal and he should follow up with a

---

[39] R. Doc. 82-1 at 10-12.
[40] *Id.*
[41] *Id.*
[42] *Id.* at 4.

8

physician.[43]  Moreover, in 2016, Meaux sought treatment from Dr. Brij Mitruka for lower back pain and wrote on the information history that he had "3 Bad Disk in my Back."[44]

In opposition, Meaux argues that he did not intentionally conceal a condition of ruptured or herniated disks because he did not know he had that specific condition.[45]  While Meaux freely admits he has had lower back pain since 2012, he contends that he never knew the particular nature and extent of the problem.[46]  According to Meaux, the 2012 MRI was done in connection with an application for employment with the Public Belt Railroad, and the precise results of the test were not shared with him.[47]  Moreover, Meaux claims that "bad disks" could mean any number of things, such as a bulge, strain, sprain, desiccation, or degenerative disease, and not necessarily a rupture or herniation.[48]  Thus, Meaux argues that he did not intentionally make a false representation as to his back problems on Savard's preemployment medical questionnaire.[49]

Considering the evidence presented by Savard and Meaux's statements regarding his lower back pain, the Court cannot conclude on the record before it that there is no genuine issue of fact whether Meaux intentionally concealed a disk rupture or herniation.  While it is undisputed that Meaux knew he had lower back pain, Savard has not shown that Meaux was aware he had a ruptured or herniated disk.  Without such evidence, including for example, contemporaneous physician's notes stating that Meaux was informed of this specific condition, there remain disputed issues of material fact regarding what exactly Meaux knew about his back problems and whether he intentionally concealed the specific diagnosis of a ruptured or herniated disk.  It cannot be said that the question posed in the preemployment medical questionnaire – whether he had a ruptured

---

[43] *Id.* at 4-5.
[44] *Id.* at 6.
[45] R. Doc. 90 at 9.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 17.
[49] *Id.* at 16-18.

or herniated disk – was "obviously designed to elicit information" concerning any and all lower back or lumbar problems. *Brown*, 410 F.3d at 174-75 (quoting *McCorpen*, 396 F.2d at 549). Because Savard has failed to prove the first prong of the *McCorpen* defense, summary judgment is not warranted.[50]

### 2. Cervical Spine Injury – Terminating Treatment

Savard argues that it was justified in terminating maintenance and cure as to Meaux's cervical spine injury after it paid for the surgery and Meaux ceased treatment.[51] Thus, Savard insists that its obligation to pay maintenance and cure ended when Meaux stopped attending physical therapy.[52] Savard contends that when Meaux stopped attending physical therapy, it appeared that he had ceased treatment, and there is no medical evidence to support Meaux's claim of "flu-like" symptoms causing him to miss the physical therapy sessions.[53]

Meaux responds that he did not fail to comply with treatment.[54] According to Meaux, he stopped physical therapy before the surgery, with his doctor's consent, because it was too painful, and he missed some post-surgical appointments because he was sick.[55] Meaux further argues that Savard has no evidence to contradict this so is not entitled to summary judgment.[56]

This portion of Savard's motion for summary judgment implicates the same factual issues as did Meaux's own earlier summary-judgment motion seeking to establish that defendants arbitrarily terminated his maintenance-and-cure benefits. The facts alleged are exactly the same, and nothing has changed. As the Court previously held in denying Meaux's motion, there are still

---

[50] Consequently, at this time, the Court need not discuss the second and third *McCorpen* prongs of materiality and causal connection.
[51] R. Doc. 82-1 at 15-18.
[52] *Id.*
[53] *Id.*
[54] R. Doc. 90 at 19-23.
[55] *Id.*
[56] *Id.*

unresolved issues of fact about, and the consequent need to make credibility determinations concerning, Meaux's discontinuation of physical therapy and the reasons he stopped attending appointments, as well as questions regarding the legal ramifications of these facts. Thus, summary judgment on Meaux's entitlement to maintenance and cure for his cervical spine injury is inappropriate at this stage of the litigation, and Savard's motion for summary judgment is DENIED in this respect.

### IV. CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Savard's motion for summary judgment (R. Doc. 82) is DENIED.

New Orleans, Louisiana, this 22nd day of April, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE