**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHON R. MEAUX** | **CIVIL ACTION NO. 2:19-CV-10628** |
| | |
| **VERSUS** | **SECTION M** |
| | **JUDGE BARRY W. ASHE** |
| **COOPER CONSOLIDATED, LLC AND SAVARD MARINE SERVICES INC. D/B/A SAVARD LABOR & MARINE PERSONNEL, INC.** | **DIVISION 5** |
| | **MAGISTRATE JUDGE MICHAEL B. NORTH** |

**COOPER CONSOLIDATED, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS**
**RENEWED MOTION FOR RECONSIDERATION**

**MAY IT PLEASE THE COURT:**

Defendant, Cooper Consolidated, LLC ("Cooper Consolidated"), renews its Motion for Reconsideration of this Court's Order and Reasons finding that Plaintiff, Jonathon Meaux ("Plaintiff"), was a Jones Act seaman.  [R. Doc. 44].

On May 11, 2021, the United States Court of Appeals for the Fifth Circuit issued a unanimous *en banc* opinion in the case of *Sanchez v. Smart Fabricators of Texas, LLC,* C.A. No. 19-20506, 2021 U.S. App. LEXIS 13929 (5th Cir. March 11, 2021).  In that opinion, the *en banc* Fifth Circuit redefined the appropriate analysis for determining the "substantial nature" prong of the seaman status analysis required under *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S. Ct. 2172 (1995).  In doing so, the Fifth Circuit expressly overruled and refused to endorse the rationale of two prior cases -- *Naquin v. Elevating Boats, LLC,* 744 F.3d 927 (5th Cir. 2014*)*, and *In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000) -- that this Court relied upon in finding that Plaintiff was a seaman.

To qualify as a Jones Act seaman, a worker must establish a "substantial connection" to a vessel (or identifiable fleet of vessels) in terms of both duration and nature. Courts within the Fifth Circuit looked to a worker's exposure to "perils of the sea" as the primary test for the "substantial nature" prong of *Chandris*. In this case, the Court decided that Plaintiff satisfied the "substantial nature" prong of *Chandris* because his work aboard crane barges "placed him over water" on the Mississippi River. Because "exposure to the Mississippi River [was] exposure to the perils of the sea," this Court found that the "substantial nature" prong was satisfied. But that is no longer the test under *Sanchez*, and the cases relied upon by this Court in determining the "substantial nature" prong have since been expressly overruled or directly called into question. Exposure "to the perils of the sea" is no longer enough to satisfy the "substantial nature" prong of *Chandris*.

In light of *Sanchez*, Cooper Consolidated submits that this Court should revisit its analysis of and findings regarding the "substantial nature" prong of Plaintiff's alleged work with Cooper Consolidated.[1] For the reasons discussed below, because Plaintiff cannot satisfy the "substantial nature" requirements as articulated in *Sanchez*, he is not a Jones Act seaman.

1.       ***Sanchez* Ruling and the Fifth Circuit's Correction of Applicable Analysis**

Following *en banc* rehearing on the issue of seaman status, the Fifth Circuit issued a ruling on May 11, 2021 in the case of *Sanchez v. Smart Fabricators of Texas, LLC*, concluding that Sanchez, a land-based welder performing repair jobs on two vessels, was not a seaman. The *en banc* Fifth Circuit found that the work performed by Sanchez was not "sea-based work," and, as such, he could not satisfy the "substantial nature" requirement under *Chandris*. *Sanchez*, 2021 U.S. App. LEXIS at *2. In its opinion, the unanimous Fifth Circuit explained that its prior panels'

---

[1]       Although Cooper Consolidated still maintains that Plaintiff was not assigned to a vessel and fails to satisfy the "substantial duration" prong of *Chandris*, those issues need not be considered in connection with this Motion. Instead, the sole focus of this Motion concerns Plaintiff's inability to satisfy the "substantial nature" prong of *Chandris* in light of *Sanchez*, as it is undisputed that Plaintiff's work did not involve seagoing activity or sailing with a vessel.

decisions in *Naquin* and *Endeavor Marine* were incorrect because they wrongly interpreted and applied Supreme Court precedent in analyzing the "substantial nature" prong.

In *Naquin*, the plaintiff was a vessel repair supervisor who was injured while working on a fleet of lift boats that were all either at anchor, moored, jacked-up, or docked in the shipyard canal. 744 F.3d at 931, 935. Although the *Naquin* plaintiff's work did not involve any seagoing activity, the *Naquin* court found that the plaintiff's work still exposed him "to the perils of the sea," meaning the "substantial nature" prong of *Chandris* was satisfied. The original Fifth Circuit panel in *Sanchez* followed and applied the rationale from *Naquin*. However, on rehearing, the *en banc* Fifth Circuit expressly overruled *Naquin* "[b]ecause all of Naquin's work was performed on or near the dock." As such, the *en banc* Fifth Circuit held that the *Naquin* panel had "erred in analyzing *Naquin* based solely on the 'perils of the sea' test…." 2021 U.S. App. LEXIS at *15.

Likewise, in *Endeavor Marine*, the plaintiff was a crane operator -- who like Plaintiff here -- worked aboard a crane barge in the Mississippi River. The district court found that the plaintiff was not a seaman because he could not satisfy the "substantial nature" prong of *Chandris*. However, the panel of the Fifth Circuit reversed and remanded, noting in a single line from the opinion that "in the course of his employment, [plaintiff] was regularly exposed to the perils of the sea." *In re Endeavor Marine, Inc.*, 234 F.3d at 292. This was the full extent of the panel's discussion of the "substantial nature" prong.

In *Sanchez*, the *en banc* Fifth Circuit stated that it did not endorse the *Endeavor Marine* panel's rationale and principal consideration of whether the plaintiff was subject to the "perils of the sea." 2021 U.S. App. LEXIS at *16. The *en banc* Fifth Circuit specifically held that the prior panel holdings in *Naquin* and *Endeavor Marine* were inconsistent with Supreme Court precedent on the issue of seaman status, including the guidance set forth in *Harbor Tug and Barge Co. v.*

*Papai,* 520 U.S. 548 (1995).  In *Papai*, the Supreme Court illustrated what was necessary to satisfy the nature element for seaman status: "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."  *Id*. at 555.

Therefore, the *en banc* Fifth Circuit ruled that, when analyzing the "substantial nature" prong of *Chandris*, "[s]imply asking whether the worker was subject to the 'perils of the sea' is not enough to resolve the nature element."  2021 U.S. App. LEXIS at *17 (emphasis added.) Instead, the analysis must concentrate on whether the plaintiff's work involved "seagoing activity," as originally outlined and discussed in *Papai*. To that end, the *en banc* Fifth Circuit corrected its interpretation of the "substantial nature" prong of *Chandris* by dismissing the analysis's sole focus on whether or not the worker's work exposed him "to the perils of the sea."

In its place, the Fifth Circuit set forth the following inquiries to consider when analyzing the "substantial nature" prong of *Chandris*:

1. Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?

2. Is the work sea-based or involve seagoing activity?

3. (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection the vessel ends or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

2021 U.S. App. LEXIS at *18.

In *Sanchez,* all of the plaintiff's work was performed over water.  However, it was not of a "seagoing nature," and the plaintiff did not sail with any vessel as part of his work assignment. Applying its corrected standard, the *en banc* Fifth Circuit concluded that Sanchez's work on

vessels was like that of a longshore worker, such that he failed to satisfy the "substantial nature" prong. *Id.*, at *18-21.

2.        **This Court's Seaman Status Ruling**

This Court's Order and Reasons [R. Doc. 44] found that Plaintiff was a Jones Act seaman. In that ruling, this Court expressly relied on *Endeavor Marine* in finding that Plaintiff's work exposed him "to the perils of the sea" because his work "placed him over water" aboard vessels on the Mississippi River.  [R. Doc. 44, at pp. 10, 13.]  Further, this Court also cited to and relied upon *Naquin* in finding that Plaintiff satisfied the "substantial nature" prong of *Chandris*.  [*Id.*]

Cooper Consolidated previously moved for reconsideration on the basis that Plaintiff could not satisfy the "substantial duration" prong of *Chandris*.  In deciding that Motion, however, this Court noted again that "the Fifth Circuit has held that exposure to the Mississippi River is exposure to the perils of the sea."  In support of this statement, this Court again cited to *Endeavor Marine*. [R. Doc. 57, at p. 6.]

In previously addressing the "substantial nature" prong, the Court focused its analysis on whether Plaintiff's work aboard vessels on the Mississippi River exposed him "to the perils of the sea."  This Court reasoned that Plaintiff's work as a flagger or utility man, who assisted in loading and unloading operations on moored vessels, placed him over water on the Mississippi River, thereby exposing him to the "perils of the sea.  [R. Doc. 44, at p. 13.]  However, considering *Sanchez*, the standard for analyzing the "substantial nature" prong of *Chandris* requires more than mere presence aboard vessels on the Mississippi River, which means the Court should revisit its prior finding on this issue.

**3.**     **In light of *Sanchez*, Plaintiff cannot satisfy the "substantial nature" prong of *Chandris*.**

Applying the new analysis as articulated in *Sanchez* establishes that Plaintiff cannot satisfy the "substantial nature" prong of *Chandris*.  Merely working on vessels while those vessels are on the Mississippi River no longer satisfies the applicable analysis, as evidenced by the *en banc* Fifth Circuit expressly overruling *Naquin* and dismissing the rationale behind the *Endeavor Marine* holding.  Since *Naquin* and *Endeavor Marine* have now been expressly overruled and directly called into question, this Court should revisit the analysis to consider the new three-part inquiry outlined in *Sanchez.*

a.     *Plaintiff did not owe his allegiance to a vessel, but rather to a shoreside employer.*

It is undisputed that all of Plaintiff's work was for Savard and Cooper Consolidated, who are shoreside employers.  Plaintiff worked as directed and in connection with Cooper Consolidated's cargo loading and unloading operations.  Notably, Plaintiff did not work solely for a single vessel.  Rather, as evidenced by the uncontested material facts submitted by Cooper Consolidated, Plaintiff worked at three different land-based locations during his brief 44-day employment: LaPlace, Belle Chasse and Darrow.  [R. Docs. 28-4, 37-1.]  On any given day at those locations, Plaintiff might work aboard a crane barge operated by Cooper Consolidated or, more times than not, aboard a larger cargo vessel as it was being loaded or unloaded.  [*Id*.]

In the 44 days that Plaintiff worked for Cooper Consolidated, it is undisputed that he worked on 11 different vessels: 9 larger cargo vessels and 2 different crane barges.  [*Id*.]  It is also undisputed that Plaintiff did not perform his work as a flagger while physically aboard a Cooper Consolidated crane barge; this work was done on larger cargo vessels, meaning it was not specific to a single vessel.  [*Id*.]  Even Plaintiff's work aboard Cooper Consolidated crane barges was

sporadic and dependent entirely upon what land-based location he was working at that day, whether the larger cargo vessel was being loaded or unloaded, and whether he was working as a flagger or utility man.  [R. Docs. 28-3, 28-4.]  Plaintiff's work varied depending on where he was and what larger cargo vessel was at that location.  His work was not determined based upon the location of a specific Cooper Consolidated crane barge.

Considering the undisputed facts and the analysis provided by *Sanchez* and *Papai*, Plaintiff owed his allegiance to Savard and Cooper Consolidated, which are shoreside employers.

b. *Plaintiff's work was not "sea-based" and did not involve "seagoing activity."*

As noted by the Court in its prior ruling, Plaintiff worked as a flagger and utility man for Cooper Consolidated to assist in its cargo loading and unloading operations.  [R. Doc. 44, at p. 13.]  On reconsideration, the Court noted that "the label put on Meaux's work – longshore or seaman duties – is irrelevant because he was doing the barges' work whether as a deckhand or utility man on the barges, or as a flagman, signalman, or spotter for the crane operators."  [R. Doc. 57, at p. 6.]  However, the Fifth Circuit's enunciation in *Sanchez* now makes the type of work and whether it is "sea-based" or "seagoing activity" relevant to the "substantial nature" inquiry.

The Fifth Circuit has long recognized loading and unloading cargo as stevedoring work, not seaman work. *Jones v. Cooper T. Smith Stevedoring Co.*, 354 F. App'x 143, 146 (5th Cir. 2009) ("Loading and unloading cargo are classic stevedoring activities.").  "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555, 117 S. Ct. 1535, 1540 (1997).  Plaintiff's work was not navigation-based.  It was related to cargo loading and unloading operations in connection with a moored and stationary crane barge alongside a larger cargo vessel.

Here, it is undisputed that Plaintiff never went "to sea."  All of his work was located aboard vessels that were already anchored or moored on the Mississippi River.  Plaintiff did his work while the larger cargo vessels were already anchored or moored midstream in the Mississippi River.  The crane barges would, in turn, be tied up to these already anchored or moored larger cargo vessels.  No part of Plaintiff's work required him to get aboard a vessel while it <u>moved</u> over water.  Considering the *en banc* Fifth Circuit's disapproval of the *Endeavor Marine* rationale – which turned on working on vessels moored on the Mississippi River -- one can safely conclude that merely performing work aboard vessels that are anchored or moored on the Mississippi River does not constitute "sea-based" work or "seagoing activity."

Rather, to determine what constitutes "sea-based" work or "seagoing activity," one should consider those cases that have analyzed *Papai* within that context, including *Jones v. Cooper/T. Smith Stevedoring Co., Inc.*, C.A. No. 08-3879, 2009 U.S. Dist. LEXIS 9085 (E.D. La. Feb. 6, 2009).  In *Jones*, the plaintiff assisted "unloading cargo from an ocean-going ship located offshore in the Mississippi River."  *Id.* at *1.  Like the loading and unloading work done in this case, the larger cargo vessel's cargo was transferred by crane barge to an adjacent cargo barge.  All of the vessels engaged in the cargo operations "were located in the Mississippi River."  *Id.* at *2.  In finding that the plaintiff was not a Jones Act seaman, Judge Africk noted that the plaintiff's work did not constitute "seagoing activity."  *Id.*, at *15, n.18.

In *Schultz v. La. Dock Co.*, 94 F.Supp.2d 746, 750 (E.D. La. 2000), Judge Sear held that, despite the fact that the plaintiff supposedly spent more than 40% of his time working on floating, moored barges and another 40% of his time being transported up or down the river on tugboats to reach these floating, moored barges, he was not a seaman.  Explaining this finding, Judge Sear noted that the plaintiff "did not go to sea or face the perils of the sea in the manner associated with

seaman status. Plaintiff ate meals ashore and went home every night. He admitted that with respect

to the vessels used to transport him around the facility he did not serve as a deckhand." *Id.*

"Sea-based work" or "seagoing activity" is that which exposes a worker to the "special

hazards and disadvantages" that are unique and commonly faced by those who qualify as seaman.

As Judge Milazzo has explained, those "special hazards and disadvantages" include:

> the need to fight fires without outside assistance, the need to abandon ship, the need
> to survive exposure to inclement weather until help arrives, potential delay or
> inconvenience in being transported offsite to receive medical attention and being
> stuck on a vessel under the control of its Master and operator for extended periods
> of time.

*Duet v. Am. Commer. Lines, LLC*, C.A. No. 12-3025, 2013 U.S. Dist. LEXIS 54937, at *13 (E.D.

La. Apr. 17, 2013). Plaintiff faced no such hazards or disadvantages.[2] His work did not take him

from port to port or far away from the ultimate safety of firm ground. He was not aboard any

vessel for an extended period of time; he worked a 12-hour shift from 7:00 am to 7:00 pm and then

left. [R. Doc. 28-2, at pp. 9, 20.] He was, in fact, never far away from either bank of the Mississippi

River, where he returned to land after every shift and went home. [*Id.*]

Simply put, Plaintiff's work was not "sea-based" and did not constitute "seagoing activity"

as contemplate by both *Sanchez* and *Papai*.

        c.      *Plaintiff performed discrete tasks aboard the various vessels that he worked*
                *on and, when he was done, he left and went home.*

Plaintiff clearly performed discrete tasks aboard the various vessels that he worked.

Plaintiff would report to work each day for his 12-hour shift. [*Id.*] During his 12-hour shift, he

served as either a flagger or utility man, assisting in the loading and unloading of the larger cargo

vessels. When his shift ended, Plaintiff would go home. He would return the next day and do the

---

[2]      Nor can Plaintiff, who ultimately carries the burden on proving his seaman status, establish that he was
exposed to such "special hazards and disadvantages."

same tasks, acting as a flagger or utility man and assisting in the loading and unloading of the larger cargo vessels.

It is undisputed that Plaintiff began and ended each day on land.  [*Id*.]  It is similarly undisputed that he did not sleep aboard any Cooper Consolidated vessel.  [*Id*.; *see also* R. Docs. 28-4, 37-1.]  When Plaintiff's shift ended for the day, he left the worksite and went home every night, while the larger cargo vessel and the Cooper Consolidated crane barge stayed at that work location and continued to work.

It is also undisputed that Plaintiff did not sail with any Cooper Consolidated crane barge from location to location or sail with the larger cargo vessels once they finished loading or unloading operations.[3]  In other words, Plaintiff did not sail with the vessel after he finished his daily work.  *See* Sanchez, 2021 U.S. App. LEXIS 13929, at *20.  Instead, Plaintiff went home every night and returned the next day to whatever location to which he was supposed to report. When Plaintiff returned the next morning, he would take a crew boat out to the midstream mooring operation, where the crane barge was either already tied-up alongside the larger cargo vessel or was in the process of being tied-up to the larger cargo vessel.[4]

Taken as a whole, Plaintiff's work is similar to that done by the plaintiffs in *Sanchez* and *Papai*.  He performed discrete tasks, did not sail with any vessel from one location to the other, and, like the plaintiff in *Papai*, went home every day after work.

### CONCLUSION

In light of *Sanchez*, and for the reasons noted above, Plaintiff cannot satisfy the "substantial nature" prong of *Chandris*.

---

[3]      Nor could he since the crane barges lack motive power; they have to be moved by tugboats.  It is undisputed that Plaintiff did not work on the tugboats that moved these crane barges up and down the Mississippi River.
[4]      Exhibit 1, Plaintiff's deposition, at pp. 133 - 136; *see also* R. Doc. 28-2, at pp. 18 - 19.

As such, Cooper Consolidated respectfully requests that its Motion be granted, and the Court's prior Order and Reasons [R. Doc. 44] on seaman status be withdrawn and replaced with a finding that Plaintiff fails to qualify as a Jones Act seaman.

Respectfully submitted,

JONES WALKER LLP

*/s/ Hansford P. Wogan*

R. SCOTT JENKINS (La. Bar 23144)
HANSFORD P. WOGAN (La. Bar 34825)
Jones Walker LLP
201 St. Charles Avenue - Suite 4800
New Orleans, Louisiana  70170
Telephone:  (504) 582-8000   Fax:  (504) 582-8583
sjenkins@joneswalker.com
fwogan@joneswalker.com
*ATTORNEYS FOR COOPER CONSOLIDATED, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May 2021, a copy of the foregoing has been forwarded to all counsel of record by United States mail, first class postage prepaid, electronic filing, email and/or facsimile.

*/s/ Hansford P. Wogan*

{N4391805.1}

11