## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

JONATHON R. MEAUX

VERSUS

COOPER CONSOLIDATED, LLC
AND SAVARD MARINE SERVICES
INC., D/B/A SAVARD LABOR &
MARINE PERSONNEL, INC.

CIVIL ACTION NO. 19-10628

SECTION "M"
JUDGE BARRY W. ASHE

DIVISION "5"
MAG. JUDGE MICHAEL NORTH

### PLAINTIFF JONATHON MEAUX'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT COOPER CONSOLIDATED, LLC'S
### RENEWED MOTION FOR RECONSIDERATION

Defendant Cooper Consolidated, LLC's new, third attempt at analysis on seaman status is once again incorrect and misses the mark.[1] Just as the defendants' previous oppositions to plaintiff's single motion for summary judgment (Doc. 25, 26, 27-2, 30, and 31) and previous request for reconsideration or certification for review (Doc. 46), the instant request for reconsideration analyzes the law improperly. The recent Fifth Circuit en banc decision in *Sanchez v. Smart Fabrications of Texas, L.L.C*[2] does not support defendant Cooper Consolidated  LLC's Renewed Motion for Reconsideration[3], which requests the reversal of this Court's decision granting plaintiff's motion for partial summary judgment finding that plaintiff Jonathon Meaux was the Jones Act seaman of Cooper[4], and that motion should be denied.

---

[1] See Order & Reasons of August 6, 2020,R. Doc. 44 at 12: Cooper and Savard "miss the point" by their analysis of the percentage of time Meaux physically spent aboard the Cooper barges
[2] C.A. No. 19-20506, 2021 U.S. LEXIS 13929 (5th Cir. May 11, 2021)
[3] R. Doc. 104
[4] R. Doc.44

As the discussion which follows will detail, the *Sanchez* decision does not weaken plaintiff's position in this case; the inquiries on the "nature" of the substantial connection to a vessel element that the *Sanchez* Court said should be made show that it is undisputed that, unlike the plaintiff in *Sanchez*:

1. Meaux, the borrowed employee of Cooper as a matter of law, owed his allegiance to the Cooper's vessels, to which he was assigned by Cooper, the operator of those vessels, and for whose mission and function he consistently worked, rather than to any shoreside employer.

2. Meaux's work was sea-based or involved seagoing activity.

3. (a) Meaux's assignment to the Cooper's vessels was not limited to performance of a discrete task after which his connection to the vessel ended, and (b) his assignments included sailing with the vessel from location to location.

As a result, if anything, the additional inquiries in *Sanchez* solidify Jonathon Meaux's status as a seaman in this case and defendant's motion for reconsideration should be denied.

## I.      Procedural Background

In its Order & Reasons dated August 6, 2020[5], this Court granted Meaux's motion for summary judgment[6] , holding that plaintiff Jonathon Meaux was both a seaman and the borrowed employee of defendant Cooper as a matter of law: the Jones Act seaman employee of defendant Cooper .

Cooper then filed a motion for reconsideration of the ruling that plaintiff Meaux is a Jones Act seaman or, alternatively, to certify interlocutory appeal (R. Doc. 46), which the court properly denied by Order & Reasons of September,10, 2020[7] .

_____

[5] R. Doc.44
[6] R. Doc.17
[7] R. Doc. 57

On May 11, 2021 the Fifth Circuit issued the en banc decision in *Sanchez v. Smart Fabricators of Texas,L.L.C.,* No. 19-20506, 2021 U.S. LEXIS 13929 (5th Cir. May 11, 2021).

On May 25, 2021, Defendant Cooper filed the instant renewed motion for reconsideration[8] , claiming that this Court should reconsider and reverse its ruling that Meaux is a Jones Act seaman based on *Sanchez.* Cooper does not, by this motion, challenge this Court's summary judgment ruling that Meaux was the borrowed employee of Cooper during his employment when he performed work for Cooper in the service of Cooper's crane barges.

## II. Law and Argument

Despite Cooper's claims to the contrary, the holding in *Sanchez* has no helpful effect on Cooper's position in this case. The *Sanchez* plaintiff was primarily a *land-based* welder directed by his employer to work on two discrete short-term transient repair jobs on two vessels. The vessel on which he spent approximately 72 percent of his total work time with his employer was at the dock, and Sanchez could take two steps on the gang plank and he was ashore. That vessel was not in service – it was, essentially, dry-docked while he welded. While he serviced *the vessel's ability to function in the future*, he did not work in the service of *the mission and function of the vessel*: he acted, merely as a vessel repairman and did not contribute to the mission of the vessel – the "nature" of his connection to the vessels in question was, by definition, transitory and not an essential connection to the vessels themselves. By contrast, Jonathon Meaux was unquestionably a member of the crew of Cooper's identifiable group of crane barges in this case.

### A. The Holding in *Sanchez*

In the decision in *Sanchez,* the Fifth Circuit concluded that the following additional inquires should be made when analyzing the "nature element" of the seaman status test that "a

---

[8] R. Doc. 104

3

seaman must have a connection to a vessel in navigation  (or to an identifiable group  of vessels) that is substantial in terms of both its duration and its ***nature.***" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (emphasis added; cited by *Sanchez* at 11):

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) does the worker's assignment include sailing with the vessel from port to port or location to location?

*Id.* at 16.

The Fifth Circuit in *Sanchez* relied heavily on the "substantial nature" test from *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548 (1997) in which the Supreme Court held that "maintenance work while the tug was docked" specifically *does not* satisfy the "nature" test for seaman status – in *Sanchez*, the worker in question spent the vast majority of his time doing "maintenance work while the [vessel] was docked," and therefore he had no true connection to the vessel.[9]

By contrast, virtually all of Meaux's work for Cooper was in service of the vessel while it was actually functioning in the Mississippi River, including on the day of his injury when he took a crew boat to the vessel.

### B. Meaux' Employment Is Significantly Different from Sanchez' Employment

Before  discussing the additional inquiries required by *Sanchez*, it should be noted that the pertinent facts regarding Meaux's employment are dramatically different from the employment of the Plaintiff in *Sanchez*; they are not anywhere close.

---

[9] *Sanchez* at 17-18

1.  Sanchez was a land-based welder.[10] Meaux was not a land-based worker.[11]

2.  Sanchez was directed by his employer Smart Fabricators of Texas, LLC to work on two discrete short term transient repair jobs on two vessels owned by one of SmartFab's customers.[12] Meaux, the borrowed employer of Cooper, performed only Cooper's work, which was not short term transient work, and that work was in the service of Cooper's vessels.

### C. The Facts of Meaux's Employment Applied to the "Additional Inquiries" Required by *Sanchez*

Before analyzing the facts bearing on the additional inquiries, it should initially be pointed out that the Court *in Sanchez* noted that a worker being subject to the "perils of the sea" is still a factor to be considered in the evaluation of the nature connection element: "While this [the worker being subject to the "perils of the sea"] is *one of the considerations in the calculus*, it is not the sole or even the primary test" (at 15). In the Court's Order & Reasons granting partial summary judgment finding that Meaux was a seaman it concluded that: "Likewise, Meaux easily satisfies the requirement that his connection to the Cooper barges was substantial in nature…Meaux's work as a flagger and utility man assisting in the loading and unloading operations of the crane barges to which he was assigned placed him over water…thereby exposing Meaux to the perils of the sea."[13] .

Furthermore, the Fifth Circuit in *Sanchez* did *not* overrule *In re Endeavor Marine, Inc.,* 234 F. 3d 287 (5th Cir. 2000) (per curiam), stating with regard to that case that:

Based on the fact that (1) plaintiff was permanently assigned to and worked on the same barge during his entire employment, (2) the barge was moved on occasion to

---

[10] *Sanchez* at 2
[11] This Court held that " there was no summary- judgment evidence that he [Meaux] did any land-based work …" R. Doc. At 4.
[12] *Sanchez* at 2.
[13] R. Doc. 44 at 13

different wharfs on the Mississippi River and the plaintiff moved to whatever new location the vessel was moved to, we cannot say that the *Endeavour Marine* panel erred in holding the plaintiff was a seaman. However, as we explained below, we do not endorse the panel's rationale.[14]

The Fifth Circuit therefore does *not* hold that *Endeavor Marine* was erroneously decided or overruled – simply that in addition to the *Endeavor Marine* test an additional inquiry should be undertaken to make certain that the rationale and requirements of *Papai* are taken into consideration. When the additional inquires to be considered are evaluated, just as the plaintiff in *Endeavor Marine* does, Meaux meets the requirement of a connection to an identifiable group of vessels that is substantial in nature.

> **(1) *Meaux owed his allegiance to the Cooper crane barge vessels, rather than simply to a shoreside employer***

Meaux most certainly owed his allegiance to his borrowing employer Cooper's crane barges, an identifiable fleet of vessels operated by Cooper.  As the Court found: " … for the entire time of his employment, he [Meaux] was assigned as a crewmember to one of Cooper's barges (except for a brief period of training)"[15] ;  "Meaux was … a permanently-assigned member of their (the Cooper barges') crews."[16] ;  "all of Meaux's work was performed when assigned to the Cooper barges, in furtherance of their missions…"[17] ; and " Meaux was primarily assigned to Cooper's barge the *Bayou Special*, but also worked for Cooper's other crane barges, namely the *High Tide*, *Bob Frane*, and two others."[18] .

Cooper's argument on this  *Sanchez* inquiry simply misses the mark.  First, despite being the undisputed operator of a fleet of crane barges, to which vessels it assigned Meaux at its discretion

---

[14] Of course, the *Endeavor Marine* panel did not know that the en banc Court in *Sanchez* would subsequently require the additional inquiries it found necessary therein to evaluate the substantial connection in nature issue.
[15] R. Doc. 44 at 12
[16] *Id*. at 13
[17] R. Doc. 57 at 4
[18] R.Doc. 44 at 2 citing R.Doc.17-1 at 5-6

to do work in the service of those vessels, which Meaux performed the entire time of his employment (except for him attending "an orientation conducted by a Cooper employee at Cooper's office.")[19] , Cooper makes the unsupported claim that it is "undisputed" that Cooper is a shoreside employer of Meaux.[20]   In making this argument, Cooper misrepresents that "Plaintiff worked *at* three different land-based locations … Laplace, Belle Chasse and Darrow."(*Id*.; emphasis added) when in fact, as this Court found, he only worked *in the service of* Cooper's crane barges in the Mississippi River and never on land.  Having  facilities on land adjacent to the Mississippi River at these locations, from which  vessels and workers leave and return after doing their sea work, does not make Cooper a shoreside employer to whom Meaux owes allegiance. As this Court correctly held in its Order & Reasons denying Cooper's initial reconsideration motion "there was no summary-judgment evidence that he [Meaux] did any land-based work or was ever assigned as a crewmember of  a non-Cooper vessel."[21]

Meaux went through Savard to get to work with Cooper: "In January 2019, Meaux was hired by Savard, a company that supplies workers to marine companies, to work at Cooper."[22] Savard relinquished  control over him once he was sent to work for Cooper and only remained as his payroll employer: "Throughout the relevant period, Savard paid Meaux, but Cooper controlled his work."[23] There is not the slightest bit of evidence that Meaux would return to Savard at any future time to do any land-based work - or any other work for that matter - for Savard itself while he was working for Cooper in the service of its crane barges.  Meaux owed no allegiance to Savard

---

[19] R.Doc.44 at 2, citing R.Doc.17-1 at 5
[20] R. Doc. 104 1 at 6. Cooper argues that "Plaintiff owed his allegiance to Savard and Cooper Consolidated, who are shoreside employers." (R. Doc. 104-1 at 7)
[21] R.Doc. 57 at 4
[22] R.Doc. R.Doc.44, citing R.Doc. 17-1 at 5
[23] R.Doc. 44, citing R.Doc.17-1 at 7

even if Savard were to be considered a shoreside employer, considering the ruling that Meaux was the borrowed employee (servant) of Cooper.

Cooper also for some unknown reason repeats its twice-rejected argument that, during his employment, Meaux worked "on" or "aboard" 11 different vessels  - "9 larger cargo ships and 2 different crane barges"[24] , once again ignoring (a) the rule of law that "in the service" of a vessel or a group of identifiable vessels is the proper inquiry and (b), moreover,  two separate rulings by this Court finding that Meaux's work was in the service of Cooper's crane barges.  Cooper's argument on this inquiry fails to address any of the relevant inquiries previously made by this Court, and therefore simply makes no sense in the context of this request for reconsideration.

Finally, the Fifth Circuit's inquiry in question is obviously derived from the holding in the *Chandris* decision*,* which held that "[sea-based maritime workers] who owe their allegiance to a vessel and not *solely* to a land-based employer, are seamen."[25] (emphasis added) It cannot remotely be said that Meaux owed his allegiance "solely" to any land-based employer. The *Sanchez* decision simply attempts to explain the best way to use the *Chandris* and *Papai* decisions to evaluate whether the nature of the connection to a vessel of a land-based worker (like a welder) who is sent by his employer to work aboard someone else's vessel to do transient, discrete, fortuitous and/or temporary work is substantial.  This decision is unrelated to Jonathon Meaux's employment, and under the relevant inquiry, Meaux clearly owed his allegiance to Cooper's vessels.

### (2) Meaux's work was sea-based or involved seagoing activity

There is no legitimate dispute on this inquiry.  Meaux's work was sea-based and involved seagoing activity the entire time he worked for Cooper in the service of its crane barges.  The cargo ships that were loaded or unloaded by the Cooper crane barges while Meaux worked for Cooper

---

[24] R.Doc. 104-1 at 6
[25] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 359 (1995)

in their service were primarily in the middle of the Mississippi River at those times and not simply inoperable at a dock.[26] As a result, Meaux would be transported by crew boat to (and from) the Cooper crane barges, which were attached to those ships when the work of the crane barges was being performed, wherever the ships were anchored in the river. Meaux certainly meets the facts in *Endeavor Marine* cited hereinabove by *Sanchez* from which that Court concluded that the panel did not err in holding that the plaintiff there was a seaman. Meaux was permanently assigned to Cooper's crane barges during his entire employment, he moved to whatever location the vessel was moved to, and the Court has already concluded that Meaux was exposed to the perils of the sea.[27] Meaux's work was sea-based and involved seagoing activity, unlike the work of Gilbert Sanchez.

**(3)** *(a) Meaux's assignment to Cooper's vessels was not limited to performance of a discrete task after which his connection to Cooper's vessels ended, and (b) Meaux's assignment included sailing with the vessels from port to port or location to location.*

Meaux's employment meets *both* prongs of inquiry in number 3, although this 2-part inquiry is only looking for (a) *or* (b). With regard to (a), Meaux's assignment to Cooper's vessels was not limited to the performance of a discrete task after which his connection to Cooper's vessels ended: his work for Cooper and its vessels is clearly unlike the work of the plaintiff in *Sanchez*. Meaux was not a transient worker engaged to do a specific discrete short-term job, after the completion of which he would return to his land-based contractor employer, rather he was employed to engage in work servicing the mission and function of the vessels in various capacities, in various locations, as dictated by the needs of the vessel. Indeed, his title as a flagman had him

---

[26] R. Doc. 50-1 at 288. The record before this Court also shows that on the night of the incident, Meaux rode a crew boat to the *Bayou Special*, which was underway to the Darrow, boarded the *Bayou Special*, and sailed with it until tying up to the outboard side of the ship that was being loaded at the dock there. Doc. 50-1 at p. 137..

[27] R.Doc. 44 at 13, citing *Endeavor Marine* and *Phelps v. Bulk III Inc*., 2007 WL 3244723 (E.D. La. Nov. 1, 2007)

acting to direct the crane operator of the Cooper vessel to pick up, carry, and drop cargo, while his work on the day of his injury included attempting to close a barge cover.

With regard to subpart (b), Meaux's assignment included Meaux moving to the locations where the crane barges were doing their unloading of ships and barges in the Mississippi River, but the existing record in this case also proves that he sailed aboard the vessel itself. In his deposition, when discussing the day of his injury, Jonathon Meaux testified that:

> We got on the crew boat. As the barge was pushing the -- as the tugboat was pushing the crane barge down the river, we got on a crew boat, and the crew boat took us to the barge, and we proceeded down the river, I guess maybe about a half a mile, a mile. We pulled up to the ship itself. They already had crew members from Cooper on the rig -- on the ship. And we put the ship -- we put the barge on the ship, tied it off, and began to start working.[28]

Jonathon Meaux *sailed aboard the Bayou Special* to the place of his injury on the day of his injury and acted in all ways – sailing with, serving the function of, and even *mooring* the vessel – as a member of the vessel's crew.

## III.    Conclusion

Based on the foregoing, Jonathon Meaux meets all of the requirements of a Jones Act Seaman – including and especially the additional inquiries included by the Fifth Circuit in the *Sanchez* opinion. Accordingly, the Court should deny defendant Cooper's renewed motion for reconsideration and allow this case to proceed to trial with the holding that Jonathon Meaux is a Jones Act seaman as a matter of law intact.

Respectfully submitted,

  _/s/Terrence J. Lestelle_
**TERRENCE J. LESTELLE - T.A. - 8540**
**ANDREA S. LESTELLE - 8539**
**RICHARD M. MORGAIN - 32603**
**EVAN P. LESTELLE - 39609**

---

[28] Doc. 50-1 at 137.

10

**LESTELLE & LESTELLE**
3421 N. Causeway Blvd., Suite 602
Metairie, Louisiana  70002
Telephone:  (504) 828-1224
Facsimile:   (504) 828-1229
lestelle@lestellelaw.com
**ATTORNEYS FOR PLAINTIFF**
**JONATHON R. MEAUX**

## CERTIFICATE OF SERVICE

I do hereby certify that on this **9th** day of **June, 2021**, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.

_/s/Terrence J. Lestelle_
TERRENCE J. LESTELLE

11