UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHON R. MEAUX | CIVIL ACTION |
| VERSUS | NO. 19-10628 |
| COOPER CONSOLIDATED, LLC<br>AND SAVARD MARINE SERVICES<br>INC D/B/A SAVARD LABOR &<br>MARINE PERSONNEL, INC. | SECTION M (5) |

## ORDER & REASONS

Before the Court is a renewed motion by defendant Cooper Consolidated, LLC ("Cooper") for reconsideration[1] of this Court's August 6, 2020 Order & Reasons (the "O&R") holding that plaintiff Jonathon R. Meaux is a Jones Act seaman.[2] Meaux responds in opposition,[3] and Cooper replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court, while noting that Cooper's motion is well taken, denies the motion but certifies the issue of Meaux's seaman status for immediate appeal pursuant to 28 U.S.C. § 1292(b).

**I. BACKGROUND**

This matter concerns a maritime personal injury. The pertinent facts and procedural history of this case were fully recited in the O&R[5] and will not be restated herein. In the O&R, the Court held that Meaux is a Jones Act seaman because he satisfied the *Chandris* test.[6] The Court held that Meaux's work as a flagger and utility man contributed to the cargo-handling function of

---
[1] R. Doc. 104.
[2] R. Doc. 44.
[3] R. Doc. 110.
[4] R. Doc. 115.
[5] R. Doc. 44 at 2-4.
[6] *Id.* at 8-14 (applying the test articulated in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995)).

Cooper's crane barges and to the accomplishment of the barges' mission of loading and unloading vessels moored midstream in the Mississippi River.[7] Further, the Court held that Meaux's connection to Cooper's barges was substantial in terms of both its nature and duration because, for the entire period of his employment with Cooper (except orientation), he was assigned to Cooper's barges to assist in their cargo-handling mission, even when physically aboard the non-Cooper cargo vessels to perform his duties of signaling the crane operators on Cooper's barges to safely load and unload the vessels, and this work regularly exposed him to the perils of the sea (the Mississippi River).[8]

Cooper first moved for reconsideration shortly after the O&R issued, arguing that the Court erred by holding that Meaux satisfied the **duration prong** of the *Chandris* test even though he spent less than 30% of his total time employed by Cooper physically aboard the Cooper barges.[9] This Court denied the motion, explaining that while Meaux's work required him to be positioned on the cargo vessels during loading and unloading operations for signaling to the crane operators on the Cooper barges moored alongside, he was performing these duties as part of the barges' assigned crew and to advance their mission. In that sense, Meaux spent all of his employment with Cooper (except orientation) assigned to and working on or from its crane barges.[10]

## II. PENDING MOTION

Cooper argues that reconsideration is appropriate now because Meaux cannot meet the **nature prong** of the seaman status test recently articulated by the Fifth Circuit in *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564 (5th Cir. 2021).[11] In *Sanchez*, the Fifth Circuit, sitting

---

[7] *Id.* at 11-12.
[8] *Id.* at 12-14.
[9] R. Docs. 46-1 at 4-13; 55 at 1-10.
[10] R. Doc. 57.
[11] R. Doc. 104-1.

en banc, expressly overruled the panel decision in *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932 (5th Cir. 2014), and called into question the panel decision in *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000), to the extent they held that the nature prong of the *Chandris* test was satisfied if the plaintiff was exposed to the "perils of the sea," without requiring more. *Sanchez*, 997 F.3d at 573. In the wake of *Sanchez*, courts examining the nature of a putative Jones Act seaman's connection to a vessel must make the following "additional inquiries," that is, in addition to asking whether a worker was subject to the perils of the sea:

> (1) Does the worker owe his allegiance to the vessel rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*Id.* at 574.

Cooper argues that when these inquiries are applied to Meaux, he is not a seaman.[12] Cooper argues that Meaux owes his allegiance to Cooper, a shoreside employer, not to a vessel, because he reported to the job site at which Cooper needed him, regardless of which crane barge may have been there.[13] In other words, says Cooper, he did not move with the vessel.[14] According to Cooper, Meaux's work of assisting in cargo-handling operations was traditional longshore work, not seaman's work, and did not involve any seagoing activity because the cargo vessels and crane barges were moored or anchored midstream in the Mississippi River, never too far from shore.[15] Cooper contends that Meaux was not required to work aboard a vessel while it was moving over

---

[12] *Id.* at 6-10.
[13] R. Docs. 104-1 at 6-7; 115 at 3-4.
[14] R. Doc. 115 at 3-4.
[15] R. Doc. 104-1 at 7-9.

water, meaning his work was not "sea-based" or "seagoing" because he was not subject to the unique disadvantages faced by persons at sea.[16] Further, Cooper argues that Meaux performed discrete tasks on the crane barges each day, did not sail with the vessels, and returned home daily after his twelve-hour shift.[17] Thus, concludes Cooper, Meaux did not go to sea and was not a seaman under the *Sanchez* test for analyzing the nature of a person's connection to a vessel.[18]

In opposition, Meaux argues that the facts of the case satisfy the *Sanchez* test.[19] Meaux argues that he owed his allegiance to the Cooper crane barges because all his work was performed in their service.[20] He also argues that his work constituted seagoing activity because neither the crane barges nor the cargo vessels being loaded and unloaded were adjacent to land, but rather were moored or anchored midstream in the Mississippi River, exposing him to the perils of the sea.[21] Meaux maintains that he did not perform discrete tasks on the crane barges, but rather worked as a utility man doing whatever was needed to assist the barges to accomplish their cargo-handling mission.[22] Finally, Meaux points out that on the day of the accident, he sailed about a half a mile on the barge to which he was assigned and helped it tie up to the cargo vessel it was to unload.[23]

## III. LAW & ANALYSIS

### A. Reconsideration of Seaman Status After *Sanchez*

Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all

---

[16] R. Doc. 115 at 6-8.
[17] R. Docs. 104-1 at 9-11; 115 at 8-10.
[18] R. Docs. 104-1; 115.
[19] R. Doc. 110.
[20] *Id.* at 6-8.
[21] *Id.* at 8-9.
[22] *Id.* at 9-10.
[23] *Id.* at 10.

the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Unlike motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting 'the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alteration and quotation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019).

Although Cooper's renewed motion for reconsideration is well-taken and the issue of the nature of Meaux's connection to a vessel or identifiable fleet of vessels is a close call after *Sanchez*, this Court concludes, after much consideration and reconsideration of the O&R, including the relevant aspects of Meaux's duties and employment with Cooper, that Meaux is a seaman. In

5

short, Meaux satisfies the *Sanchez* test, although just barely. Each of the Sanchez inquiries is examined in turn.

As this Court previously explained in the O&R, Meaux owed his allegiance to Cooper's crane barges, an identifiable fleet of vessels under common ownership, because all his work was done in the service of those vessels as a member of their crews assisting in their cargo-handling mission. Moreover, that Cooper had shoreside facilities to which Meaux reported on his way to the crane barges does not negate the fact that Cooper was a vessel owner and Meaux worked on its vessels. In other words, even if Cooper might be considered a shoreside employer as to other of its employees, it was not as to Meaux.

Whether Meaux was engaged in sea-based or seagoing activity is a closer call. Cooper is correct that Meaux performed traditional longshore work, which is typically considered land-based employment. What is different here is that Meaux performed this work on or from a crane barge alongside cargo vessels moored or anchored midstream in the Mississippi River. Neither the barges nor the cargo vessels were dockside merely a gangplank from shore. Rather Meaux had to take a crew boat or, as he did on at least one occasion, ride the crane barge to the location of the cargo vessels being loaded or unloaded. This Court thinks this separation from the safety of land, even if not all that far, taken together with the fact that all of Meaux's work was performed aboard vessels midstream in a dangerous river, is enough of a distinction to make Meaux's work a sea-based activity. Indeed, the midstream location of Meaux's work makes this case distinguishable from *Naquin* and *Endeavor Marine* where the plaintiffs' work was performed on or near the dock. *See Sanchez*, 997 F.3d at 573. To be sure, the en banc court in *Sanchez* declined to overrule *Endeavor Marine* because, in part, the plaintiff there moved with his assigned crane barge to new

wharf locations on the Mississippi River. *Id.* Here, Meaux's work was never performed on or near a dock but was done entirely from vessels moored or anchored midstream.

Meaux did not simply perform discrete tasks for the Cooper crane barges to which he was assigned, as did the plaintiff in *Sanchez*, a welder who worked on two distinct short-term transient repair jobs on two vessels. *Id.* at 566-67. The entirety of Meaux's work for the Cooper crane barges, whether as a flagger or utility man, entailed assisting the barges in their cargo-handling operations. Meaux was not a specialized transient worker engaged to do specific discrete short-term jobs. Instead, he worked full-time on or from the crane barges to which he was assigned helping them to load and unload cargo vessels moored or anchored in the river.

Finally, although the inquiry whether Meaux was subject to the perils of the sea is not the sole or primary test for seaman status, it remains "one of the considerations in the calculus." *Id.* at 573. On this point, the Court remains convinced that Meaux's work exposed him to the perils of the sea.[24]

In sum, the Court concludes that Meaux satisfies the *Sanchez* test for establishing a connection to an identifiable fleet of vessels that is substantial in nature. It does not do so lightly or stubbornly, but with full acknowledgement that Meaux's traditional longshore work, if done from the same crane barges tied up to the same cargo vessels dockside on the Mississippi River, would land him outside the scope of Jones Act seaman status. Yet, unlike Sanchez, Meaux could not take two steps on a gangplank, separating vessel from dock, and be ashore. These two steps make all the difference.

---

[24] Cooper's renewed motion for reconsideration is rightly urged because this Court in the O&R relied, almost exclusively, on the "perils of the sea" test to hold that Meaux satisfied the nature prong. R. Doc. 44 at 13. Following *Sanchez*, it would be error for the Court not to revisit this question. Nevertheless, even after *Sanchez*, the "perils of the sea" inquiry is still relevant, just not the sole or primary test.

## B. Certification for Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292(b), a district judge can certify an issue for interlocutory appeal under certain circumstances:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order ….

Thus, a district court may certify an interlocutory appeal only if all three of the following criteria are satisfied: (1) the court's order involves a controlling question of law, (2) there is substantial ground for difference of opinion about the question of law, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007); s*ee also Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) (holding that the criteria for interlocutory appeal was not satisfied). Interlocutory review is generally reserved for "exceptional" cases because the basic structure of appellate jurisdiction disfavors piecemeal appeals. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996).

The Court finds that interlocutory appeal of the question of Meaux's seaman status is warranted at this juncture. Following *Sanchez*, seaman status in this case presents a controlling issue of law as to which there is a substantial ground for difference of opinion. The *Sanchez* court expressly overruled *Naquin* and called *Endeavour Marine* into question with respect to their treatment of the nature prong of the seaman status test. In the en banc court's view, a mere exposure to the "perils of the sea" is insufficient to establish the substantial nature of a worker's connection to a vessel, and the plaintiffs in those cases worked adjacent to a dock. This Court

recognizes that Meaux performed traditional longshore work, but that work was performed from a barge moored to another vessel midstream in the Mississippi River. Reasonable minds can differ as to whether Meaux's separation from the dock is enough to qualify him as a seaman under the *Sanchez* test. The Court finds, then, that an immediate appeal from this order, which involves the controlling question of seaman status about which there is substantial ground for difference of opinion, may materially advance the ultimate termination of the litigation of this case. As such, this Court, pursuant to § 1292(b), certifies the question of seaman status for immediate appeal.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Cooper's renewed motion for reconsideration (R. Doc. 104) is DENIED.

IT IS FURTHER ORDERED that, pursuant to § 1292(b), the issue of Meaux's seaman status is certified for immediate interlocutory appeal because it presents a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from this Court's orders (R. Docs. 44 & 57, as well as this Order & Reasons) regarding Meaux's seaman status may materially advance the ultimate termination of the litigation.

New Orleans, Louisiana, this 25th day of June, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE